**CALIFORNIA & HAWAIIAN SUGAR REFINING CORPORATION v. HARRIS COUNTY HOUSTON SHIP CHANNEL NAV. DIST. et al.**

District Court, S. D. Texas, at Houston.
July 5, 1928.

No. 977.

**1. Warehousemen  ⬗24(2)—Navigation district held liable for damage to sugar stored on its wharf by breaking of water main, unless exempt under contract.**

In action for damage to sugar, stored on wharf of defendant navigation district, because of breaking of water main, facts *held* to establish defendant's liability, except for exemption by tariff, whether case be viewed as one for application of res ipsa loquitur doctrine, or one in which negligence was established by evidence of circumstances taking it out of realm of conjecture into field of legitimate inference.

**2. Contracts  ⬗114—Public policy of freedom of contract controls in determining validity of contract excusing from liability for negligence.**

Public policy of freedom of contract controls in determining whether public policy invalidates contract excusing from liability for negligence or upholds such contract, except as against gross negligence or bad faith.

**3. Warehousemen  ⬗24(7)—Navigation district's contract against negligence held valid, so as to exonerate it from liability for damages to sugar stored on its wharf; "gross negligence;" "ordinary negligence;" "simple negligence."**

Contract excusing navigation district from liability for its negligence *held* valid, so as to exonerate it from liability for damage to sugar stored on its wharf because of breaking of water main, due to mere negligence; there being a distinction grounded on public policy between "gross negligence" and "ordinary negligence," or "simple negligence."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, "Gross Negligence;" "Ordinary Negligence."]

**4. Bailment  ⬗31(1)—Bailee must clearly establish contract exempting from liability for negligence by showing that cause of injury was specifically excepted with bailor's knowledge.**

Contract exempting bailee from liability for negligence, being contrary to established legal principles governing relation, must be clearly and affirmatively established by bailee, who must show that cause of injury was clearly and specifically excepted against, and that knowledge of such exception was affirmatively brought home to bailor.

**5. Bailment  ⬗31(1)—In absence of contract provision excepting against bailee's negligence, presumption is that it was not so intended.**

In absence of provision in bailment contract excepting against bailee's negligence, the law will presume that it was not intended to contract against negligence.

**6. Warehousemen  ⬗24(7)—Contract held not to exempt navigation district from liability for damage to sugar stored on its wharf by breaking of water pipe.**

Contract exempting navigation district from liability for damage to sugar stored on its wharf by fire, leakage, discharge from sprinklers, collapse of building, etc., and providing that property was at risk of owner, *held* not to exempt district from liability for damage from breaking of water pipe by subsidence of floor negligently laid and maintained by it.

**7. Warehousemen ⬠24(7)—Provision of bailment contract that property is at owner's risk exempts bailee from liability as insurer only.**

Under general principles of public policy governing relation of bailor and bailee, provision of contract for storage of sugar on navigation district's wharf that property is at owner's risk can be construed only as exempting district from liability as insurer and leaving it liable for negligence.

**8. Warehousemen ⬠24(7)—Knowledge of provisions exempting navigation district as warehouseman from liability for negligence held not imputed to owner of damaged sugar, because tariffs were in hands of steamship company unloading it as owner's agent.**

Knowledge imputed to owner of sugar from fact that navigation district's tariffs were in hands of steamship company, acting as owner's agent in unloading sugar damaged while on district's wharf, did not bring home to owner knowledge of claimed exemptions from liability for negligence in bailment contract, where they did not exempt from particular negligence charged and were inserted in general tariff wherein owner would not be expected to look for them.

**9. Negligence ⬠121(1)—Law presumes responsibility for negligence, in absence of notice to contrary.**

The law presumes responsibility for acts of negligence, in absence of notice to the contrary.

Action by the California & Hawaiian Sugar Refining Corporation against the Harris County Houston Ship Channel Navigation District and others. Decree for plaintiff.

Royston & Rayzor, of Galveston, Tex., for plaintiff.

Ball, Merrill & Grinstead, of Houston, Tex., for defendants.

HUTCHESON, District Judge. This is a suit by plaintiff against defendant on account of the damage to sugar stored on the wharf of defendant; the damage arising from the breaking of a water main and the consequent precipitation of large quantities of water upon the sugar; the loss being to the extent of the amount pleaded by plaintiff.

While some little contention was made in the case as to whether plaintiff had correctly proven its damage, I find no difficulty in plaintiff's way on that score, and, if it has shown actionable fault on the part of defendant, it should have judgment for the amount sued for. The question of actionable fault depends upon the contention (1) whether plaintiff has established negligence on the part of defendant; and (2) whether conceding this, defendant has pleaded and proven a valid contract exempting it from liability on that score.

The broad facts are undisputed that plaintiff, without notice or knowledge of any reason for or source of apprehension, caused its sugar to be stored upon the wharves in proper and ordinary bags and containers in which such sugar is carried; that while so stored it received serious damage from wetting, without fault on the part of plaintiff; that this wetting came from the breaking of a water pipe laid underneath the floor by the defendant, and in defendant's charge and control. The pipe broke some distance from the center of the sugar pile, and also a short distance from the outside edge of the pile, and there is no direct evidence as to what caused the pipe to break.

It is admitted that the sugar was stored on a temporary floor, the defendant having deliberately and with intention made only a thin cement topping over an earth fill, in order to furnish opportunity for the fill to settle. It is also admitted that there had been settlement of the earth floor away from the cement topping, and that in many places along the wharves the earth had subsided away from the surface floor, leaving it with only its own tensile strength for support, which the defendant admits was not sufficient or expected to carry much weight, and it is in proof that a water pipe had burst previous to this time at another place on the wharf, causing cargo damage.

The defendant established, however, that this method of maintenance and construction was by design, and claimed that in cases where the topping had given way no injury had occurred, or was to be anticipated, from the settlement of the earth away from the cement topping it, declaring that the previous break in the water pipe had not been caused by settlement. Plaintiff, however, contends that such settling of the fill and breaking of the upper floor, the tendency of which to occur was known to defendant, was a danger to the goods of the character of those stored by plaintiff, because of the probable result therefrom of pressure being applied to the water pipes, causing them to break, and they say that defendant is in this dilemma: Either the evidence has affirmatively established, as plaintiff contends, that the floor was negligently laid and maintained, and that its subsidence under the heavy weight of plaintiff's sugar caused the break in the pipe with consequent damage, or, if the evidence does not go that far, it at least establishes delivery to the defendant as bailee in good condition, and return to the plaintiff in damaged condition, with no sufficient explanation by the defendant to effect its exoneration. 6

Corpus Juris, 1158, § 160, and cases cited; 3 R. C. L., § 74, p. 151.

[1] Whether the case be viewed as one for the application of the doctrine of res ipsa, as it is technically applied, or one in which, "regardless of the doctrine of res ipsa loquitur, negligence had been established by circumstantial evidence, where the circumstances are such as to take the case out of the realm of conjecture and into the field of legitimate inference (National Biscuit Co. v. Litzky [C. C. A.] 22 F. [2d] 942), the effect of the facts is to establish defendant's liability, and with the plaintiffs I agree, unless the clauses in the tariffs give defendant an exemption.

[2] Plaintiff on this point contends that bailments of this kind are within that rule of public policy which strikes down contracts excusing from liability for negligence, while defendant insists that the law is well settled that such contracts are valid, except as against gross negligence or bad faith. The authorities upon this point are in confusion, due, of course, to the fact that the question of what is or what is not public policy, where the matter is not covered by statute, is a matter not fixed, but in flux, according to the opinions of the sitting judges, and because running across these varying views of public policy as to limitations on contracts runs the broad and controlling public policy, freedom of contract, or, as some courts express it, as a man binds himself, so shall he be bound.

[3] Plaintiff devotes much of its brief to an effort to destroy the distinction made by some courts between gross negligence and ordinary negligence. With plaintiff's effort in this regard I do not agree, for I think there inheres in the term "gross negligence," as expanded and applied by the courts in the past, a clear and certain meaning, and that the distinction sought to be made between gross and simple negligence is itself a distinction grounded upon public policy. 4 A. L. R. 1186 et seq. I am therefore of the opinion that the doctrine laid down in Interstate Compress Co. v. Agnew (C. C. A.) 255 F. 508, is a correct statement of the law, and, if the defendant has made a contract with the plaintiff against the results of its negligence, that contract must be held valid, and, the proof in this case failing to establish more than negligence, the defendant would have to be held exonerated.

[4] Such contract, however, being contrary to the established principles of law governing the relation, must be clearly and affirmatively established by the person who invokes it, and to do so he must show (1) that the cause of the injury was clearly and specifically excepted against, and (2) that knowledge of this exception was affirmatively brought home to the plaintiff.

[5-7] In both of these particulars in my opinion, the defendant has failed. In the first place, there is nothing in either of the provisions excepting against defendant's negligence, and in the absence of such provision, the law will presume that it was not intended to contract against negligence. The two clauses relied on are (1) one which sets out the particular sources of injury for which the defendant will not be responsible. These sources are fire, leakage, or discharge from sprinklers or fire protection, collapse of building, etc. The injury in question did not come from any of these excepted causes. It came, on the contrary, from the breakage of a water pipe, against which no exemption was taken by the defendant. The second clause, providing that the property is at the risk of the owner, could only, in consonance with the general principles of public policy governing the relation, be construed to mean as exempting defendant from liability as an insurer, and leaving him only liable for his negligence.

[8, 9] But if incorrect in this particular, and the clause be held sufficient, if brought home to the owner of the goods as a contractual stipulation against defendant's negligence, it could not be held effective in this case, because the evidence is affirmative that these provisions were never called to the plaintiff's attention. Such knowledge as the plaintiff had of them was that only which the law imputes to him from the fact that these tariffs were in the hands of the steamship company, which, in unloading the goods, acted as its agent, and such imputed knowledge cannot avail to bring home to the bailor that claimed exemptions from negligence in view of the fact (1) that they do not in terms seek to exempt from negligence, and (2) they are inserted in a general tariff, in which, since the law presumes responsibility for acts of negligence, in the absence of defendant's notice to the contrary, the plaintiff would not be expected to look for such exemption. Dodge v. N., C. & St. L., 142 Tenn. 20, 215 S. W. 274, 7 A. L. R. 1229; Denver Union v. Cullinan, 72 Colo. 248, 210 P. 602, 27 A. L. R. 154, and note.

It is therefore my opinion, upon the facts and the law applicable to them, that plaintiff is entitled to recover the amount sued for. Let a decree, therefore, in accordance herewith, be presented within 10 days from this date.